IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 12-CR-00010-MSK

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

DARRELL R. PARKER,

    Defendant.

_____

**REPORTER'S TRANSCRIPT**
(Hearing on Change of Plea)

_____

    Proceedings before the HONORABLE MARCIA S. KRIEGER, Judge, United States District Court for the District of Colorado, commencing at 11:05 am., on the 13th day of April, 2012, in Courtroom A901, United States Courthouse, Denver, Colorado.

**APPEARANCES**

    GUY TILL, Assistant U.S. Attorney, 1225 17th Street, Suite 700, Denver, Colorado, 80202, appearing for the plaintiff.

    CHARLES W. ELLIOTT, Attorney at Law, 1801 Broadway, Suite 1100 Denver, Colorado, 80202, appearing for the defendant.

Proceeding Recorded by Mechanical Stenography, Transcription Produced via Computer by Paul Zuckerman, 901 19th Street, Room A259, Denver, Colorado, 80294, (303) 629-9285

1                              **PROCEEDINGS**

2          (In open court at 11:05 a.m.)

3                  THE COURT:  Please be seated.

4              The Court is convened today in Case No. 12-cr-10,

5     encaptioned the United States of America vs. Darrell R. Parker.

6              The matter is set down for a change in plea.  Could I

7     have entries of appearance, please.

8                  MR. TILL:  Good morning, your Honor.  I'm Guy Till.

9     I'm an Assistant U.S. Attorney representing the Government this

10    morning, your Honor.

11                 THE COURT:  Good morning and welcome.

12                 MR. TILL:  Thank you, your Honor.

13                 MR. ELLIOTT:  Good morning, your Honor.  Charles

14    Elliot.  I represent Mr. Parker.  This is he, seated to my

15    left.

16                 THE COURT:  Good morning and welcome.

17             Are you ready to proceed?

18                 MR. ELLIOTT:  We are.

19                 THE DEFENDANT:  Yes.

20                 THE COURT:  All right.  Mr. Elliot and Mr. Parker,

21    would you please approach the lectern.

22             This matter is before the Court for a change in the

23    defendant's plea, for re-arraignment pursuant to Rule 10, and

24    for consideration of and advisement with regard to the parties'

25    plea agreement in accordance with Rule 11.

1          The record reflects that the defendant was charged in

2     an indictment filed on January 9, 2012.  He was charged in

3     Counts 8 and 32.  He entered a plea of not guilty to both

4     counts.  And now, pursuant to a written plea agreement, I

5     understand he now wishes to change his plea to a plea of guilty

6     to Count 8.

7          The Government, I assume, is dismissing Count 32.

8          *MR. TILL:*  Yes, your Honor.  We also would dismiss the

9     superseding indictment as to this defendant.

10          *THE COURT:*  Thank you.

11          Would you please re-arraign to Count 8, please.

12          *MR. TILL:*  Yes, your Honor.

13          Sir, are you the same Darrell R. Parker who is named

14     in Count 8 of the indictment filed on January 9, 2012?

15          *THE DEFENDANT:*  Yes.

16          *MR. TILL:*  Sir, in Count 8, the grand jury alleges

17     that on or about October 30, 2010, within the State and

18     District of Colorado, the defendant, Darrell R. Parker,

19     knowingly possessed a firearm and ammunition which had been

20     transported in interstate commerce, having been convicted

21     previously of a crime punishable by imprisonment for a term

22     exceeding one year, all in violation of Title 18 United States

23     Code Sections 922(g)(1) and 924(a)(2), possession of a weapon

24     by a prohibited person.

25          Sir, do you understand that charge?

 1          *THE DEFENDANT:*  Yes.

 2          *MR. TILL:*  Sir, at this time, how do you plead to that

 3   charge?

 4          *THE DEFENDANT:*  Guilty.

 5          *MR. TILL:*  Thank you, sir.

 6          *THE COURT:*  Thank you.

 7          As of this moment, sir, you are not bound by your plea

 8   of guilty.  Indeed, you're not bound by this plea until I

 9   accept the plea.  You can change your mind at any time during

10   this hearing until I accept your plea.

11          In order to accept your plea, I have to be sure you

12   understand the charges that have been brought against you; you

13   understand the choices that you have and the consequences that

14   are associated with those choices.  I have to be sure that you

15   have made a voluntary decision to enter your plea of guilty and

16   haven't been pressured into it.  And I ultimately have to find

17   that there is a factual basis to support your plea.

18          Throughout this hearing, I want to you let me know if

19   there is anything you don't understand or if you have any

20   questions.  If you'd like to consult with your attorney,

21   Mr. Elliot, at any time, just let me know and we'll take a

22   brief recess so that you can confer privately.

23          I begin by asking you a number of questions.  Those

24   questions are not intended to trap, embarrass, insult, or

25   offend you.  They are import because your answers are

1    important.  It's your answers that I evaluate in order to

2    determine whether I can accept your plea or not.  Therefore,

3    you must answer my questions truthfully and completely.

4    Indeed, just like a witness, you take a solemn oath promising

5    to tell the truth.

6          Do you wish to proceed?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  Would you please administer the oath.

9          THE COURTROOM DEPUTY:  Please raise your right hand.

10   (Defendant sworn.)

11         THE COURT:  Thank you.

12                              **EXAMINATION**

13   BY THE COURT:

14   Q.  Now, before I pose these questions, I need to advise you,

15   Mr. Parker, that you must answer the questions truthfully.  And

16   if you don't, your answers can be used against you if an action

17   is brought against you for false statement or perjury.  Do you

18   understand?

19   A.  Yes, ma'am.

20   Q.  All right.  How old are you?

21   A.  I'm 62.

22   Q.  What level of school did you complete?

23   A.  One year in college.

24   Q.  Do you have any difficulty reading or writing?

25   A.  No, ma'am.

1    *Q.*  Last time you were here, you indicated you had some

2    difficulty seeing.  Are you able to read clearly?

3    *A.*  Yeah.  At this time, yeah.

4    *Q.*  Within the last 24 hours, have you used any medications?

5    *A.*  Some medicine that I have in detention where I'm at.

6    Because of the pain, they give me pain pills.  Also for my

7    blood pressure.  And there is quite a few different.  I can't

8    remember the names.  I have to read them sometimes.  But, yeah,

9    everything is running okay for me today.

10        THE COURT:  Mr. Elliot I believe filed a list of your

11    medications.

12        Correct, Mr. Elliot?

13        MR. ELLIOTT:  That's correct, your Honor.

14    *BY THE COURT:*

15    *Q.*  Mr. Parker, would you review that list and sure those are

16    the medications that you're taking.

17       (Discussion off the record between Mr. Elliot and

18    defendant.)

19    *A.*  Yes, ma'am.

20    *Q.*  Now, you mentioned that you're taking medication for pain.

21    On a scale of 1 to 10, what is your pain level today?

22    *A.*  At this time it would be a 9, ma'am.

23    *Q.*  All right.  With a pain level of 9, that usually impacts

24    somebody's ability to process clearly and to be able to focus

25    on what is going on in the courtroom.  Would you like to confer

1    with your attorney as to whether you can proceed at this point

2    with such a high level of pain?

3    A.  Yes.  I have talked with my attorney, and I can deal with

4    it.  I can take care of what needs to be done today.

5    Q.  What can we do to reduce your pain level?

6    A.  Well, every time I take another pill, like when I get back

7    to detention, they'll give me another pain pill, release the

8    pain.  It's not going to ever heal.  I talked to my doctor

9    yesterday and she said being my age and the situation, it ain't

10   going to be full healed no more.  I have to use medicine to

11   deal with the pain.

12   Q.  I understand.  But you're telling me that you have a pain

13   level of 9 out of 10 today.  Is there anything we can do to

14   reduce that?  Would it help you to sit down?  Does that make it

15   less painful?

16   A.  Oh, yes, sitting down does.

17   Q.  Do you want to sit down here and see if your pain level

18   goes down?  I'm not comfortable proceeding with a pain level of

19   9.

20   A.  Okay.  I can sit down.

21   Q.  Okay.

22   A.  Yeah, okay.

23   Q.  What's your pain level as you're sitting down?

24   A.  It takes a little time to release the pressure to where by

25   the time -- it stretches up the leg, get tight, and I have to

1    get up and work it.  And that's the one that keeps the more

2    pain, is when I'm moving it.  So sitting down gives me a chance

3    for it to heal, the pain.

4    Q.  Then what I think we need to do -- about how long is it

5    that take for it to calm down so that it's not hurting so much?

6    A.  Yeah, I just received it before I came here, so it takes

7    time for the medicine to circulate in my body.

8    Q.  About how long does that take?

9    A.  I figure about 5 to 10 minutes.

10   Q.  And you took a pill just before you came into the

11   courtroom?

12   A.  Yes, ma'am.

13          THE COURT:  Okay.  Let's take a brief recess.  We'll

14   recess for about 10 minutes.

15          And then, Mr. Elliot, as soon as Mr. Parker's feeling

16   better and his pain levels come down, say, below a 7, then let

17   Ms. Glover know and we'll reconvene.

18          MR. ELLIOTT:  Thank you.

19          THE COURT:  Thank you.

20      (Recess at 11:15 a.m.)

21      (Reconvened at 11:23 a.m.)

22          THE COURT:  Please be seated.

23          Mr. Parker, are you feeling better?

24   A.  Yes, ma'am.

25   BY THE COURT:

1    *Q.*  What's your pain level?

2    *A.*  It's about at 5 now.

3    *Q.*  Okay, well, that's good.  Then we'll proceed with our

4    hearing here.

5           Is there anything about how you feel today physically

6    or emotionally that makes it hard for you to understand what's

7    going on?

8    *A.*  I understand everything.

9    *Q.*  Good.

10          Have you read and have you discussed the charges

11   against you with your attorney, Mr. Elliot?

12   *A.*  Yes, ma'am.

13   *Q.*  And have you discussed the terms of this plea agreement

14   with him as well?

15   *A.*  Yes, ma'am.

16          *THE COURT:*  Mr. Elliot, could you identify the plea

17   agreement for the record, please.

18          *MR. ELLIOTT:*  The plea agreement is before us as Court

19   Exhibit 1.

20          Did the Court want me to explain what the agreement

21   was?

22          *THE COURT:*  No.

23          *MR. ELLIOTT:*  Okay.  It's here with Court Exhibit 2.

24          Thank you.

25   *BY THE COURT:*

1   *Q.*   Mr. Parker, would you turn to Exhibit 1 there.  Have you

2   read that document?

3   *A.*   Yes, ma'am.

4   *Q.*   And have you discussed it with Mr. Elliot?

5   *A.*   Yes, ma'am.

6   *Q.*   Have you asked him all the questions you had about it?

7   *A.*   Yes, ma'am.

8   *Q.*   Has he answered to your satisfaction?

9   *A.*   Yes, ma'am.

10  *Q.*   Are there any other questions you want to ask him about it?

11  *A.*   No, ma'am.

12  *Q.*   Now, this document has a lot of legal language in it.  Do

13  you understand what it says and what it means?

14  *A.*   Most of them, I can understand.  And the rest of them my

15  attorney, he explained it to me.

16  *Q.*   All right.  So you understand it all now.  Is that right?

17  *A.*   Yes, ma'am.

18  *Q.*   Okay.  I'd like you to turn in that document to page 3,

19  subpart E.  Can you see that part?

20  *A.*   Yes, ma'am.

21  *Q.*   Okay.  In this provision of the plea agreement, you are

22  giving up your right to appeal the sentence that is imposed.

23  Do you understand that?

24  *A.*   Yes, ma'am.

25  *Q.*   There are only some three limited circumstances in which

1   you're going to be able to appeal from the sentence that is

2   imposed.  Do you see those there?

3   *A.*  Yes, ma'am.

4   *Q.*  Okay.  You also are giving up your right to challenge the

5   prosecution or conviction or the sentence through a collateral

6   attack.  That's what we call a petition for writ of *habeas*

7   *corpus.*  And you're giving that up, too.  Do you understand

8   that?

9   *A.*  Yes, ma'am.

10  *Q.*  And there are only some limited circumstances in which

11  you'll be able to assert rights in that context.  Do you

12  understand that?

13  *A.*  Yes, ma'am.

14  *Q.*  Have you discussed those provisions with your attorney?

15  *A.*  Yes, ma'am.

16  *Q.*  And has he answered all of your questions with regard to

17  those provisions?

18  *A.*  Yes, ma'am.

19  *Q.*  Okay.  Thank you.  Did you sign this plea agreement?

20  *A.*  Yes, I have.

21  *Q.*  Is that your signature at the end of the plea agreement?

22  *A.*  Yes, ma'am.

23       *THE COURT:*  Thank you.

24       Mr. Elliot, does Exhibit 1 also bear your signature?

25       *MR. ELLIOTT:*  It does.

1          *THE COURT:*  Sounds like you reviewed the plea

2    agreement with Mr. Parker.  Did you answer all of his

3    questions?

4          *MR. ELLIOTT:*  I did.

5          *THE COURT:*  Are you satisfied that he understands the

6    terms and provisions of this plea agreement?

7          *MR. ELLIOTT:*  I am.

8          *THE COURT:*  Thank you.

9          And I assume you've reviewed the discovery in this

10   case.

11         *MR. ELLIOTT:*  Absolutely, yes.

12         *THE COURT:*  Does it comport with the facts recited

13   here in the plea agreement?

14         *MR. ELLIOTT:*  It does.

15         *THE COURT:*  Thank you.

16         And Mr. Till, does Exhibit 1 also bear your signature?

17         *MR. TILL:*  Yes, it does.

18         *THE COURT:*  Mr. Parker, in Exhibit 1, there is a

19   statement of what the Government believes it could prove if

20   this matter went to trial.  By entering into this plea

21   agreement, you're admitting that these facts are true, and I

22   will treat them as true both for consideration your plea and

23   also for imposition of sentence.  So I'm going to ask Mr. Till

24   to recite the facts that you've agreed to.  Listen closely to

25   what he says, because when he finishes, I'm going to ask you if

1    these facts are true.  And you must tell me if you have any

2    disagreement with regard to those facts.  Do you understand?

3         *THE DEFENDANT:*  Yes, ma'am.

4         *THE COURT:*  Thank you.

5         Mr. Till, would you recite the facts that the

6    Government believes it could prove.

7         *MR. TILL:*  Yes, your Honor.

8         If we went to trial in this matter, the Government

9    would prove that on or about October 29, 2010, the defendant

10   and an undercover ATF special agent talked about the

11   defendant's selling the undercover a pistol for $600.

12        The next day, on or about October 30, 2010, the

13   undercover agent and the defendant met at a -- in a motor

14   vehicle parked near 26th Avenue and Welton Street in Denver,

15   Colorado.  At trial, the ATF agent would testify that the

16   meeting took place within the State and District of Colorado.

17   At trial, the ATF agent would identify the defendant,

18   Mr. Darrell R. Parker, and describe his participation in the

19   meeting.  The ATF undercover agent would identify the defendant

20   that negotiated with the ATF undercover agent for the sale of a

21   firearm and eventually delivered the firearm on October 30,

22   2010.

23        At trial, the ATF undercover agent would testify the

24   defendant handed the ATF undercover agent one Charter Arms

25   .38 caliber revolver and a box of ammunition in exchange for

 1    $600 in United States currency.

 2          At trial, the evidence would show the Charter Arms

 3    pistol was manufactured in Connecticut and had moved in and

 4    affecting interstate commerce to be in Colorado in October of

 5    2010.

 6          At trial, the evidence would also show the defendant

 7    had been previously convicted in 1992 of a state felony

 8    punishable by imprisonment for a term exceeding one year, to

 9    wit: second degree assault in Case No. 92-CR-1371 in Denver

10    District Court, which is a state felony, your Honor, and that

11    all of this took place in violation of Title 18 United States

12    Code Section 922(g).

13          *THE COURT:*  Thank you.

14    *BY THE COURT:*

15    *Q.*  Mr. Parker, are these facts true?

16    *A.*  Yes, ma'am.

17    *Q.*  Thank you.  Then let's talk a little bit about penalty

18    here.

19          The maximum statutory penalty for the offense charged

20    in Count 8 is 10 years of imprisonment.  There can be a fine of

21    up to $250,000.  Both can be imposed.

22          The term of imprisonment can be followed by up to

23    three years of supervised release following that term, and

24    there is a mandatory statutory assessment of $100.

25          This is a felony conviction.  And as a felony

1    conviction, it may affect your civil rights, including your

2    right to obtain licenses; own, use, or carry a firearm; hold

3    elective office; serve on a jury, or your right to vote.

4           Do you understand that?

5    A.   Yes, ma'am.

6    Q.   Thank you.

7           In the federal system, we measure terms of

8    imprisonment differently than they're measured in the state

9    system.   We measure them in months, not years.

10          They do not come with an automatic reduction, and

11   there is no parole.   That means that every month I sentence you

12   to serve, you'll serve.

13          Now, there are a limited number of ways to reduce a

14   sentence, and you're giving up a number of these under this

15   agreement.

16          First, you can appeal from a conviction and a

17   sentence; but you've given up your right to do so except in

18   very limited circumstances.

19          You can collaterally attack a conviction and a

20   sentence, but you've given up that right as well except in very

21   limit circumstances.

22          A third way to reduce a sentence is totally in the

23   discretion of the Bureau of Prisons.   They can give you credit

24   against your sentence of up to 54 days per year, but that's not

25   automatic; it's something they decide each year based upon

1    whether you follow their rules and their regulations.

2            Now, after completion of an imprisonment term here,

3    there is a term of supervised release.  And the supervised

4    release term has a number of conditions that go with it, and

5    your behavior is supervised by a probation officer.

6            The conditions fall into two categories, standard and

7    special; and they're enforced exactly the same way.  The

8    expectation is you will follow all of the conditions all of the

9    time.  And if you don't, the probation officer can request that

10   your supervised release term be revoked.  If it is revoked, you

11   can be sent back to prison for another term.

12           Do you understand?

13   A.   Yes, ma'am.

14   Q.   Now, the penalty that will be imposed here is not simply a

15   function of the statute of conviction.  There are other

16   statutes that come into play.  The most important of these is

17   18 U.S.C. Section 3553.  That sentence applies to all

18   sentences -- I mean that section applies to all sentences in

19   the federal system.  And it tells me that I have to impose a

20   sentence that is sufficient but not greater than necessary to

21   satisfy particular objectives.  Your sentence has to promote

22   respect for the law, provide just punishment, adequately deter

23   criminal conduct, protect the public from further crimes by

24   you, and provide you with needed educational or vocational

25   training, medical care, or other correctional treatment in the

1     most effective manner.

2          And in order to determine what sentence is appropriate

3     to satisfy those objectives, this statute tells me what I can

4     consider.  I can consider the nature and circumstances of the

5     offense, your history and characteristics, the kinds of

6     sentences that are available, what the Federal Sentencing

7     Guidelines would recommend, the need to avoid unwarranted

8     sentence disparities among defendants with similar records

9     found guilty of similar conduct, and in the appropriate case

10    I'd consider restitution.

11         In the plea agreement, your attorney and the

12    Government's attorney have calculated what they think the

13    federal Sentencing Guidelines would recommend, and those

14    calculations begin on page 6 of your agreement.

15         Now, there are several things you need to know about

16    these calculations.  First of all, what's in the plea agreement

17    is not binding on the Court.  It's an estimate.  It's an

18    estimate of how the attorneys think the Federal Sentencing

19    Guidelines will apply.  And it's based on the information they

20    had at the time you entered into the plea agreement.  But at

21    the time of sentencing, we're not going to be working from

22    these calculations; we're not going to be working from this

23    document.  We're going to be working from another document

24    called the presentence investigation report.  And the

25    presentence report is prepared by the probation officer who is

1    directed to do it on behalf of the Court.

2         You'll have an opportunity with your attorney to meet

3    with the probation officer, answer questions, supply

4    information, and that officer will get information from other

5    sources as well.

6         All of the information that's pertinent to the

7    formulation of your sentence will go into this presentence

8    report.  And you'll get an opportunity to read it and discuss

9    it with your attorney, and if you have an objection to it to

10   tell the probation officer that you have an objection.

11        The probation officer will have an opportunity to

12   amend the report.  And if the probation officer doesn't amend

13   the report to address or adequately address your concern, it's

14   an issue you can bring up at the time of sentencing.

15        But you should understand that these calculations may

16   be different from what the probation officer calculates in the

17   presentence report, and that's why it is critical that you

18   review that report and discuss it with your attorney.

19        Now, the last thing that you should understand is that

20   the calculation under the Federal Sentencing Guidelines is only

21   one factor that I consider in determining your sentence.  It's

22   an important factor, but it's not the only factor.  It's a

23   starting point, but it's not necessarily the ending point.  And

24   that's because the sentence that is imposed has to satisfy

25   those sentencing objectives I mentioned just a couple minutes

1   ago.  And if the calculation under the guidelines doesn't do

2   that, then I can impose a non-guideline sentence.

3   Now, sometimes people call that a variant sentence.

4   Sometimes people call it a statutory sentence.  But it all

5   means the same thing.  It's a sentence outside the guideline

6   range.  And that is a sentence that can be higher than the

7   guideline range or lower than the guideline range, whatever is

8   necessary in order to satisfy those sentencing objectives.

9   Your sentencing hearing will take place a number of

10   weeks from now.  And as I said, prior to that hearing, you and

11   your attorney will meet with the probation officer and you'll

12   have an opportunity to review the presentence report.

13   At the time of sentencing, your attorney will make

14   arguments with regard to what sentence he believes is

15   appropriate under the law based upon the information contained

16   in the presentence report.  He may make arguments that pertain

17   to whether it's a guideline sentence or a non-guideline

18   sentence.  He may dispute aspects of the presentence report.

19   The Government attorney will have the same opportunity, and you

20   will have an opportunity to make a statement; but no one other

21   than your attorney may make a statement on your behalf during

22   the hearing.  If there are other folks you'd like to have

23   submit information to the Court about you or your history and

24   characteristics, they need to do so by letter sent to the

25   probation officer, not to me but to the probation officer, to

1    be included with the presentence report.

2            The presentence report will have restricted access,

3    which means that the public cannot see what is in that report.

4    You and your attorney and the Government's attorney will be

5    able to see that; and I will, too.  And one of the reasons that

6    the letters, if you had -- submit any, will be attached to that

7    report is they also will be subject to restricted access as

8    well.

9            Do you understand the objectives and factors I'll be

10   considering in determining your sentence?

11   A.   Yes, ma'am.

12   Q.   Do you understand the maximum sentence that can be imposed?

13   A.   Yes, ma'am.

14   Q.   Do you understand you're pleading guilty to a felony charge

15   and that this could affect your civil rights?

16   A.   Yes, ma'am.

17   Q.   Do you understand that the sentence I impose might be more

18   severe than that which is calculated in Exhibit 1?

19   A.   Yes, ma'am.

20   Q.   And do you understand if I accept your plea today, no

21   matter what the sentence is, you won't be able to withdraw your

22   plea at the time of sentencing?

23   A.   Yes, ma'am.

24   Q.   Do you have any questions about sentencing?

25   A.   Yes -- No, ma'am.

1          *THE COURT:*  Thank you.

2          Then Mr. Elliot, would you please identify the

3  statement in advance for the record.

4          *MR. ELLIOTT:*  That is also now before Mr. Parker.  It

5  is noted by stamp as Court Exhibit 2.

6          *THE COURT:*  Thank you.

7  *BY THE COURT:*

8  *Q.*  Mr. Parker, would you please turn to Exhibit 2.  Have you

9  read this document?

10  *A.*  Yes, ma'am.

11  *Q.*  Have you discussed it with your attorney?

12  *A.*  Yes, ma'am.

13  *Q.*  Have you asked him all the questions you had about it?

14  *A.*  Yes, ma'am.

15  *Q.*  Has he answered to your satisfaction?

16  *A.*  Yes, ma'am.

17  *Q.*  Are there any other questions you want to ask him?

18  *A.*  No, ma'am.

19  *Q.*  Did you sign this document?

20  *A.*  Yes, ma'am.

21  *Q.*  Is that your signature at the end of the document?

22  *A.*  Yes, ma'am.

23  *Q.*  Thank you.

24          Let's go over the constitutional rights you're giving

25  up today by making your plea of guilty.  Under the United

1   States Constitution, you're guaranteed a number of rights and

2   protections, and you're giving up some of those today by

3   entering your plea of guilty.

4          First and foremost, the Constitution guarantees to you

5   that when a charge like this is brought against you, you can

6   have it determined by a jury in a jury trial.  Now, ordinarily

7   that trial would take place in this courtroom, the jury would

8   sit over there to my left in the jury box, 12 people would

9   serve on that jury, and you and your attorney and the

10  Government's attorney would participate in selecting the jurors

11  to ensure that they are fair and impartial and would apply the

12  law in this case.  But you're giving up your right to that jury

13  trial.

14         In the jury trial, I would provide the jury with

15  instructions as to the law.  And I would tell them that they

16  have to reach a unanimous decision in order to convict you of

17  the charge brought against you.  If any one of them had a

18  reasonable doubt as to your guilt, you couldn't be convicted.

19         During the trial process, you have some other

20  constitutional rights.  For instance, you have the right to

21  remain silent.  That means in the first instance that nobody

22  can compel you to say anything, can't compel you to answer any

23  questions.  The jury can't consider your silence in determining

24  whether the Government has proven the charge or charges against

25  you.  And your attorney, if you remain silent, gets to

1    cross-examine all the witnesses, object to the Government's

2    evidence, and argue to the jury.

3            You can waive that right if you choose to at trial.

4    You could testify if you wanted to.

5            In addition you have the constitutional right to be

6    represented by an attorney.  And here, Mr. Elliot has

7    represented you thus far.  But if you wish to proceed to trial,

8    I'm sure he would represent you ably and well at trial.

9            Now, if you went to trial and you were convicted, you

10   could appeal from your conviction and you could appeal from

11   your sentence; but here, by entering a plea of guilty, you're

12   giving up your right to appeal from your conviction.  And by

13   the terms of your plea agreement, you're giving up your right

14   to appeal from your sentence except under very limited

15   circumstances.

16           Do you understand that you will waive your right to a

17   jury trial and other constitutional rights as I've described if

18   you proceed with your plea agreement today?

19   A.   Yes, ma'am.

20   Q.   Is that what want to do?

21   A.   Yes, ma'am.

22   Q.   At what institution are you currently being housed?

23   A.   The city detention.

24   Q.   Denver?

25   A.   Yes, Denver.

1    Q.   Okay.   Have you been treated all right?

2    A.   The medical, yes, ma'am.   They have refined to it, yes.

3    Q.   Has anybody there or anybody else pressured you to enter

4    this plea today?

5    A.   No, ma'am.

6    Q.   Has anybody promised you something that isn't in the plea

7    agreement?

8    A.   No, ma'am.

9    Q.   Have you had enough time to review and consider and discuss

10   your plea agreement with your attorney?

11   A.   Yes, ma'am.

12   Q.   Are you satisfied with Mr. Elliot as your attorney?

13   A.   Yes, ma'am.

14   Q.   Do you have any concerns, complaints, or criticism about

15   your legal representation?

16   A.   No, ma'am.

17   Q.   Do you want to ask Mr. Elliot any questions?

18   A.   No, ma'am.

19   Q.   Do you have any questions for me?

20   A.   No, ma'am.

21   Q.   Well, then now is the time to finalize your decision.   This

22   plea agreement, Exhibit 1, the one we've been discussing:   Do

23   you still want to proceed with it?

24   A.   Yes, ma'am.

25   Q.   You still want to plead guilty to Count 8 of the original

1    indictment?

2    *A.*  Yes, ma'am.

3            *THE COURT:*  Thank you.

4            And Mr. Till, this agreement anticipates dismissal

5    of -- well, it doesn't reference the superseding indictment;

6    but it anticipates that, I suppose, and also the dismissal of

7    Count 32.  Are you prepared to orally request that?

8            *MR. TILL:*  Yes, your Honor.  I do orally request that.

9            *THE COURT:*  All right.  Does the remaining charge,

10   Count 8, reflect the seriousness of the actual offense

11   behavior?

12           *MR. TILL:*  Yes, your Honor, it does.

13           *THE COURT:*  If I were to accept the agreement and

14   dismiss these charges, would the statutory purposes of

15   sentencing be undermined?

16           *MR. TILL:*  No, your Honor, they would not.

17           *THE COURT:*  Mr. Elliot, any objection?

18           *MR. ELLIOTT:*  No, your Honor.

19           *THE COURT:*  Thank you.

20           Mr. Elliot, any reason not to accept the plea and plea

21   agreement?

22           *MR. ELLIOTT:*  No, your Honor.

23           *THE COURT:*  Mr. Till?

24           *MR. TILL:*  No, your Honor.

25           *THE COURT:*  Thank you.  Do either of you desire to

 1   supplement the record?

 2          MR. ELLIOTT:  I do not.

 3          MR. TILL:  No, your Honor.

 4          THE COURT:  Thank you.  Then based upon the record

 5   made in open court today in Case No. 12-cr-10, encaptioned for

 6   purposes of this hearing as the United States of America vs.

 7   Darrell R. Parker, I hereby find that the defendant is fully

 8   competent to enter an informed plea.  He's been represented

 9   through the course of this case and proceeding, and he has no

10   objection, criticism, or complaint as to the representation

11   he's received.  He's aware of the nature of the charges against

12   him and the effects and consequence of his plea guilty.  He has

13   knowingly and voluntarily waived fundamental constitutional

14   rights, including his right to jury trial, his right to appeal,

15   and his right to bring a collateral attack.  He understands the

16   penalty to be imposed by the Court will be based on the facts

17   stated in the plea agreement and may exceed the calculations in

18   Exhibit 1, the plea agreement.  His plea of guilty is voluntary

19   and knowingly made, and the charge and plea are supported by an

20   independent basis in fact.

21          Pursuant to the terms of the plea agreement, the

22   Government has moved to dismiss Count 32 in the original

23   indictment and all counts in the superseding indictment.  I

24   find good cause exists to grant this motion to dismiss.  The

25   remaining count, Count 8, adequately reflects the seriousness

1    of the actual behavior, and the agreement does not undermine

2    the statutory purposes of sentencing.

3            It's therefore ordered that Court Exhibits 1 and 2 are

4    received, the plea as made in open court today is accepted, and

5    the defendant is adjudged guilty as charged in Count 8 of the

6    original indictment.

7            The motion to dismiss Count 32 and the counts in the

8    superseding indictment is granted, but the effect of this order

9    is stayed until sentencing.

10           The probation department will conduct a presentence

11   investigation and submit a presentence report as required by

12   Rule 32.  Defendant, with the assistance counsel, shall

13   participate in the investigation and cooperate fully with the

14   probation department.

15           It looks like the sentencing has been set here for

16   July 13, 2012, at 11:00 a.m.  Does that still work for

17   everybody?

18           *MR. TILL:*  Yes, your Honor.

19           *MR. ELLIOTT:*  Yes, your Honor.

20           *THE COURT:*  Thank you.

21           Trial with regard to the charges brought against

22   Mr. Parker was vacated upon the filing of the notice of

23   disposition.  I don't believe there are any motions that need

24   to -- well, that need to be addressed, but let me double-check.

25           Are you aware, Counsel, of any motions we need to

1    address?

2              *MR. ELLIOTT:*  I do not believe there to be any, Judge.

3              *MR. TILL:*  I agree, your Honor.

4              *THE COURT:*  Okay.  Any other matters to bring before

5    the Court?

6              *MR. ELLIOTT:*  No, your Honor.

7              No, your Honor.

8              *THE COURT:*  Thank you, Mr. Till.

9              Thank you, Mr. Elliot.

10             Mr. Parker, I'll see you at the time of sentencing.

11   And until then, you'll be remanded to the care and custody of

12   the United States Marshal's Service.

13             I thank our marshal's staff and our court staff, wish

14   you all a good weekend.  We'll stand in recess.

15             *MR. ELLIOTT:*  Thank you, your Honor.

16        (Recess at 11:47 a.m.)

17                       *   *   *   *   *

18                    **REPORTER'S CERTIFICATE**

19        I certify that the foregoing is a correct transcript from

20   the record of proceedings in the above-entitled matter.  Dated

21   at Denver, Colorado, this 19th day of August, 2013.

22

23                              *S/Paul A. Zuckerman*
                              _____
24                              Paul A. Zuckerman

25